IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NEVADA STORM,

       *Plaintiff,*

v.

NANCY A. BERRYHILL,

       *Defendant.*

Civil No. 1:17-cv-1183-LO-JFA
Hon. Liam O'Grady
Hon. John F. Anderson

## MEMORANDUM OPINION AND ORDER

This matter arises out of Plaintiff's allegations that her former supervisors retaliated against her for having engaged in prior protected activity in violation of Title VII. Defendant filed a Motion for Summary Judgment (Dkt. 30). The motion is fully briefed and the Court held oral argument on August 31, 2018.

## I. BACKGROUND

Plaintiff Nevada Storm is a former employee of the Office of the Chief Administrative Law Judge, Division of Workload Management, at the Social Security Administration ("SSA"). Defendant Nancy A. Berryhill is the Acting Commissioner of the SSA.

Plaintiff was an employee of the SSA from 2007 until her termination on June 3, 2015. Sherry Snow became Plaintiff's first-level manager in May 2012. In August 2012, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against co-worker Devon Brown alleging sexual harassment. This was the fourth EEO complaint Plaintiff had filed while at the Social Security Administration. The 2012 EEO complaint also named Snow because Plaintiff alleged that after Plaintiff reported Brown's alleged sexual harassment, Snow laughed and started

requiring Plaintiff to work on assignments with Brown. Plaintiff informed Snow that she intended to file the 2012 EEO complaint as early as August 2012. Snow was therefore aware of the 2012 EEO complaint as early as August 2012 and no later than March 12, 2013, when Snow was notified of the EEO investigation.

In or about October 2013, Snow informed Plaintiff's second-level manager, Donna Sasser, that Plaintiff "needed to show significant improvement in her job performance in order to maintain a fully successful rating."

During the first half of 2014, Snow consulted with Human Resources and Sasser about Plaintiff's performance issues and the steps Snow needed to take to place Plaintiff on a Performance Assistance plan ("PA") if her performance did not improve.

On or about April 30, 2014, Snow met with Plaintiff to discuss her 2014 performance to date. During that meeting, Snow identified concerns with Plaintiff's performance in two "critical" categories and advised Plaintiff that she needed to show improvement in those areas.

On August 26, 2014, Plaintiff testified in a deposition regarding the 2012 EEO complaint against Brown and Snow. Plaintiff alleges, without a citation to the record, that Snow knew of Plaintiff's deposition and the nature of the testimony.

On August 28, 2014, Snow placed Plaintiff on a 30-day PA because Plaintiff's performance in those "critical" categories had not improved. Snow advised Plaintiff that if her performance did not improve during the thirty days, she would be placed on an Opportunity to Perform Successfully plan ("OPS") – SSA's version of a formal Performance Improvement Plan ("PIP") – and would be subject to removal. After this meeting, Plaintiff contacted the EEO office to initiate a complaint alleging that she had been placed on the PA as a reprisal for testifying in the deposition. Sasser's Declaration states that Snow was not able to issue a PA prior to August

28, 2014 because "it takes time to document and prepare a PA, which is done in consultation with DHR."

At the end of the PA period, on September 29, 2014, Snow met with Plaintiff to discuss her performance. Snow again determined that despite Plaintiff's placement on the PA, Plaintiff's performance in the two critical categories at issue had not sufficiently improved. Snow then placed Plaintiff on a formal 120-day OPS/PIP.

At the end of the OPS/PIP period, on January 26, 2015, Snow again determined that Plaintiff had failed to improve her performance in the two critical categories to a successful level. On February 6, 2015, Snow issued Plaintiff's appraisal for the fiscal year 2014, concluding that Plaintiff's performance was "not successful."

On May 1, 2015, Snow issued Plaintiff a Notice of Proposed Removal, concluding that Plaintiff had failed to achieve successful levels in the two relevant critical areas and her performance warranted removal. The Notice of Proposed Removal included detailed examples of Plaintiff's allegedly unacceptable work during the PA and OPS/PIP periods. It also explains why Snow determined that neither reassignment nor demotion were appropriate alternatives to termination. *See* Def.'s Ex. 14. Plaintiff submitted a Response to Notice of Proposed Removal. *See* Def.'s Ex. 15. After reviewing Plaintiff's response, Division Director Sasser determined that Plaintiff had not performed at an acceptable level in the areas identified in her OPS/PIP and issued a decision on June 3, 2015 terminating Plaintiff's position.

Plaintiff argues that SSA violated Title VII by placing her on the PA and ultimately terminating her in reprisal for her prior protected EEO activity: filing the 2012 EEO complaint and participating in the August 26, 2014 deposition.

3

Defendant moved for summary judgment. Defendant argues that Plaintiff cannot establish a *prima facie* case for retaliation because Plaintiff cannot show a causal connection between the protected activities and the adverse employment actions. Specifically, Defendant argues Plaintiff cannot prove causation because either (a) the decision to take adverse employment actions preceded the claimed protected activity, or (b) the claimed protected activity was too remote in time from the adverse employment actions. Alternatively, Defendant argues that SSA had non-pretextual, legitimate, non-retaliatory justifications for placing Plaintiff on the PA and ultimately terminating her.[1]

## II. LEGAL STANDARD

Summary judgment will be granted where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory assertions of state of mind or motivation are insufficient. *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). As the Supreme Court has held, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 447 U.S. at 247–48) (emphasis in original).

---

[1] The Equal Employment Opportunity Commission determined that "the Agency did not subject Petitioner to disparate treatment based on reprisal" because even assuming for the sake of argument that Plaintiff established a *prima facie* case, "the Agency articulated a legitimate nondiscriminatory reason for removing her" and Plaintiff "did not prove, by a preponderance of the evidence, that the Agency's articulated reasons was a pretext for reprisal." Compl. at 22 (EEOC Decision).

4

## III. DISCUSSION

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), establishes a burden-shifting framework for evaluating Title VII retaliatory discrimination claims where, as here, there is no direct evidence of discrimination. *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 249–50 (4th Cir. 2015). To prevail under this framework, the Plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 250. To establish a *prima facie* case of discrimination, Plaintiff must show: "(i) that she engaged in a protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)) (internal quotation marks omitted).

If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the Defendant "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.*

If the Defendant makes this showing, the burden shifts back to the Plaintiff to demonstrate that the Defendant's purported nonretaliatory reasons were a pretext for discrimination. *Id.* To show pretext, Plaintiff must establish both that the Defendant's purported reasons for the adverse employment actions were false and that retaliation was the "real reason" for those actions. *Id.* at 252. At this stage in the burden-shifting framework, Plaintiff must satisfy her ultimate burden of proving that the alleged retaliation was a "but for" cause of the challenged adverse employment action. *Id.*

### A. There Is No Genuine Issue of Material Fact

As an initial matter, Plaintiff failed to respond sufficiently to certain facts set forth in Defendant's Statement of Undisputed Material Facts. The Local Rules instruct that a party

responding to a Motion for Summary Judgment "shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and *citing the parts of the record relied on to support the facts alleged to be in dispute.*" Local Civ. R. 56(B) (emphasis added). In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. The Fourth Circuit has explained that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings," but must "set forth specific facts showing there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)). Additionally, "[m]ere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

Plaintiff does not directly respond to Defendant's Statement of Undisputed Material Facts. Instead, Plaintiff sets forth fourteen facts she believes are disputed material facts. As such, all facts not referenced in Plaintiff's list of fourteen are deemed admitted. Of the fourteen facts Plaintiff alleges are disputed, Plaintiff fails to cite to any record evidence to support the alleged dispute for facts 1, 2, 3, 4, 5, and 6. The corresponding statements or omissions of fact by Defendant are thus deemed admitted.

Plaintiff's disputed facts 7, 8, 11, 12, and 14 are related to specific instances of poor performance alleged by the SSA. Plaintiff does not, however, dispute the vast majority of the alleged instances of unsatisfactory work performance cited by SSA. These allegedly disputed facts also do not show evidence of either causation or pretext. Accordingly, Plaintiff's disputed facts 7, 8, 11, 12, and 14 are not material.

Plaintiff's disputed facts 9 and 10 allege that Plaintiff was given a larger workload than similarly situated employees after being placed on the PA. Plaintiff cites an assignment log as evidence of disputed fact 10: "Plaintiff had 9 reports where she was primary, while similarly-situated employees had, 3, 3, 4, and 6 reports each." While Plaintiff does not cite evidence in the record to support fact 9, the assignment log is some evidence of Plaintiff's claim that she was assigned more tasks than similarly situated employees. But, the assignment log does not state the difficulty or time-intensiveness of each assignment. Hence, while the assignment log shows that Plaintiff was given a larger number of assignments than co-workers, it does not support Plaintiff's claim that her overall workload was disproportionately high. Moreover, the assignment log does not contain evidence of either causation or pretext. For these reasons, Plaintiff's disputed facts 9 and 10 are not material.

Plaintiff's disputed fact 13 references an email Plaintiff alleges thanks her for successful completion of an assignment. Plaintiff's disputed fact 13 is not material because "[o]ne positive email does not demonstrate that [Defendant] was satisfied with Plaintiff's performance as a whole, and it fails to raise a genuine dispute of fact with respect to the issue of whether Plaintiff met [Defendant]'s legitimate expectations at the time of her termination." *Bart-Williams v. Exxon Mobile Corp.*, 2017 WL 4401463, at *15 (E.D. Va. Sept. 28, 2017) (Lee, J.).

### B. **Defendant is Entitled to Summary Judgment as a Matter of Law**

Plaintiff concedes that Defendant asserted a legitimate basis for its adverse employment actions against her. Pl.'s Opp'n at 8. The Court therefore assumes for the sake of argument that Plaintiff has established a *prima facie* case of retaliation and proceeds to the third phase of the *McDonnell Douglas* burden-shifting framework. To survive summary judgment, Plaintiff "must demonstrate a genuine dispute of material fact for trial on the issue of whether her alleged

protected activity was the 'but for' cause" of the adverse employment actions. *Bart-Williams*, 2017 WL 4401463, at *18 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

Both parties agree that there were two relevant instances of protected activity in this case: filing the 2012 EEO complaint and testifying in the August 26, 2014 deposition regarding that complaint. Both parties also agree that the PA, OPS/PIP, and ultimate termination were adverse employment actions.[2] The parties' primary dispute is whether Plaintiff has established "but for" causation based on temporal proximity alone.

Plaintiff filed her EEO complaint in August 2012 and Snow became aware of the complaint no later than March 2013. Yet, Snow did not raise concerns regarding Plaintiff's work until October 2013, seven months after the EEO complaint was filed. Plaintiff was also not placed on the PA until August 2014, almost a year and a half after Snow learned of the EEO complaint. In the Fourth Circuit, a three month or greater lapse between the protected activities and the adverse employment actions is deemed "too long to establish a causal connection" between the two events. *Perry v. Kappos*, 489 Fed. Appx. 637, 643 (4th Cir. 2012) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (unpublished)). Accordingly, Plaintiff has failed to show that Defendant retaliated against her for filing the 2012 EEO Complaint.

Plaintiff has similarly failed to show that her testimony in the August 26, 2014 deposition was the "but for" cause of her placement on the PA, subsequent placement on the OPS/PIP, and ultimate termination. The record contains evidence that Snow became concerned with Plaintiff's

---

[2] Plaintiff also alleges that Defendant retaliated by assigning her extra work, giving her assignments for which she lacked training, and treating her differently from her colleagues by not completing her assignments during her absences. As noted above, these allegations are not supported by evidence in the record and are therefore irrelevant for the purposes of determining Defendant's Motion for Summary Judgment.

8

performance in late 2013 and was working on placing Plaintiff on the PA during the first half of 2014. This evidence demonstrates that SSA had made the decision to place Plaintiff on the PA prior to her testifying in the August 26, 2014 deposition. As a result, no inference of retaliation arises from Plaintiff's placement on the PA subsequent to her testimony at the deposition. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.") (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)); *Campbell v. Esper*, 2018 WL 1794724, at *3 (E.D. Va. April 16, 2018) (Hilton, J.) (finding that Plaintiff failed to establish "but for" causation because the defendant had already preliminarily decided to take the adverse employment action before the protected activity occurred).

Plaintiff's arguments regarding pretext do not alter this analysis. First, many of Plaintiff's arguments lack factual support in the record, including her arguments that: (1) Snow knew of the deposition and the nature of Plaintiff's testimony at the deposition, (2) Plaintiff was given a disproportionate amount of work, (3) Plaintiff was given assignments for which she lacked training, (4) Plaintiff's assignments were not completed during her absences as were other employees' assignments, and (5) on numerous occasions Snow declined to provide Plaintiff with the documents Snow claimed had errors.

Second, Plaintiff argues that Defendant's assertions lack credibility because Snow made positive statements about Plaintiff's work performance while Plaintiff was on the OPS/PIP. Plaintiff only provides evidence of one such statement. As noted earlier, this single instance of a positive email does not rebut Defendant's evidence that Defendant was dissatisfied with

9

Plaintiff's performance as a whole at the time it undertook the adverse employment actions. *Bart-Williams*, 2017 WL 4401463, at *15.

Similarly, Plaintiff cites two discrete instances where Snow's comments regarding her work were allegedly unfounded. Even assuming Plaintiff's characterizations of the two instances are true, this evidence does not establish pretext because the record shows extensive documentation of Plaintiff's unsatisfactory performance beyond those two instances.

Finally, Plaintiff argues that Defendant's reasons are pretextual because "[p]rior to engaging in any protected activity, Plaintiff was performing at a satisfactory level and never received any negative feedback about her work." This argument fails to prove pretext because "acceptable job performance in the past does not establish acceptable job performance at the time of termination." *Diamond v. Bea Maurer, Inc.*, 128 Fed. Appx. 968, 973 (4th Cir. 2005).

Essentially, Plaintiff has pointed to little more than her own assertions and the fact that her supervisors had knowledge of her 2012 EEO complaint at the time of the adverse employment actions to meet her burden of proving "but for" causation and pretext. By contrast, Defendant's evidence shows that SSA (1) documented the deterioration in Plaintiff's work, (2) complied with standard procedure in giving Plaintiff multiple opportunities to improve her performance prior to termination, and (3) decided to initiate adverse employment action several months after Plaintiff filed her 2012 EEO complaint and several months before Plaintiff testified in the August 2014 deposition. The evidence in the record therefore does not reasonably support the inference that retaliation was the "but for" motive of the adverse employment actions at issue. *Cf. Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457, 459 (4th Cir. 1989).

## IV. CONCLUSION

For the reasons stated above, the reasons stated from the bench, and for good cause shown, Defendant's Motion for Summary Judgment is **GRANTED**.

It is **SO ORDERED**.

September 25, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge